IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMAL BARGHOUTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:12-cv-1258-JPG-DGW |
| | ) | |
| RYAN DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S. C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendant, Ryan Davis, on October 18, 2013 (Doc. 21) be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

Plaintiff currently is incarcerated at the Stateville Correctional Center. The claims in the Complaint arose on July 4, 2011 while he was incarcerated at the Menard Correctional Center ("Menard CC"). Plaintiff alleges that he was assaulted by Defendant Ryan Davis on July 4, 2011 and that he was denied medical care from July 4, 2011 to August 12, 2011 (Doc. 8).

Plaintiff specifically alleges that on July 4, 2011, he was escorted to the North II cell house, where he would be residing, and was searched and placed in the shower area. He was

then directed to exit the shower area by Correctional Officer Davis, the receiving officer.  As he exited, Officer Davis punched him repeatedly about the neck and head.  Plaintiff believes that he was attacked by Officer Davis because Davis had heard that Plaintiff was being moved for allegedly assaulting another correctional officer.   Shortly thereafter, as Officer Davis was escorting him from the internal affairs department (where he had been interviewed), Plaintiff alleges that he was again beaten around the head by Officer Davis.  Finally, when Officer Davis placed Plaintiff in his cell, he alleges that Officer Davis tried to break his wrist and "slam[med] plaintiff's hands in the chuckhole," while  un-cuffing him.  Thereafter, Plaintiff alleges that he requested medical care and sought to "speak to a member of the crisis team" but that unspecified people "ignored" his requests.  Plaintiff only makes a claim for excessive force against Officer Davis in a Complaint dated December 11, 2012 (Doc. 1).

Defendant filed a Motion for Summary Judgment (Doc. 21) arguing that Plaintiff failed to exhaust his administrative remedies regarding the July 4, 2011 incident.  Defendant argues that Plaintiff did not file a grievance while he was at Menard CC and that his subsequent attempts to file his grievance with the Administrative Review Board ("ARB") were untimely. Plaintiff responds that he was thwarted in his efforts to file his grievance at Menard CC and that he submitted his grievance while at Pontiac Correctional Center (where he was transferred after Menard CC) to no avail.  On January 13, 2014, this Court conducted a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) in which Plaintiff and a witness, Sarah Johnson (Chairperson of the ARB), appeared by videoconference and Defendant appeared by counsel.

**FINDINGS OF FACT**

Menard CC has no record of Plaintiff filing an emergency grievance regarding the events of July 4, 2011 underlying this lawsuit.  (Lori Cunningham Affidavit ¶ 8-9, Doc. 22-1, p. 15). The ARB received two grievances, one dated July 17, 2011 and the other dated July 18, 2011, on November 14, 2011 (Doc. 22-1, pp. 5-10).  Both grievances were rejected as untimely (*Id.* at 5, 8).  The only grievance that concerns the actions of Defendant Davis on July 4, 2011 is dated July 18, 2011 (*Id.* at 6-7).

Plaintiff testified that when he penned the July 18, 2011 grievance, he had the grievance photocopied by the law library.  The copy of the grievance provided by Defendant shows an electronic date stamp on the lower left-hand corner of July 20, 2011 (Doc. 22-1, p. 6).  The copy of the grievance provided by Plaintiff does not show a date stamp on the first page of the 2-page grievance, but does show an identical date stamp on the second page (upper right-hand corner) (Doc. 30, p. 9).[1]  Plaintiff argues and testified that he submitted these grievances while he was in segregation at Menard CC but that they were lost by correctional officers (an eventuality that he anticipated by photocopying the grievances).[2]  Plaintiff also testified that correctional officers

---

[1] The copies of these grievances contain an additional explanatory paragraph at the end that does not appear to be part of the original grievance:

> I sent a copy to the Chief Administrative Officer and got no response in Menard CC.  I was transferred to Pontiac CC and was not allowed to get this grievance out my legal box until 10-3-2011.  I sent a copy to counselor Elits and he lost my grievance and never responded.

(Doc. 22-1, p. 7, Doc. 30, p. 9).

The Court concludes that Plaintiff added this paragraph for the benefit of the ARB.

[2] The July 17, 2011 grievance, which does not include any facts directly related to Plaintiff's

were particular hostile to him and that he did not have an opportunity to inquire about the status of his grievance.  He also did not see a counselor while he was in segregation at Menard CC. Plaintiff did not file any additional emergency grievances while he was at Menard CC.

On August 17, 2011, Plaintiff was transferred to Pontiac Correctional Center ("Pontiac CC").  The property box, which contained his legal documents and copies of his grievances, was not made accessible until October 3, 2011.  When he had possession of his grievances, he submitted them to various counselors and then to the Warden at Pontiac, Randy Pfister, on an emergency basis.  Warden Pfister responded on November 7, 2011, that the matter was not an emergency and that Plaintiff should follow the normal grievance process (Do. 30, p. 14). Plaintiff then sent a copy of this grievance (with Warden Pfister's response) to the ARB which rejected it as untimely on November 11, 2011 (*Id.* at 13).[3]  Ms. Johnson testified that she did not have a copy of this grievance or the ARB's response.

---

allegations against Defendant Davis, also contains an electronic July 20, 2011 date stamp (Doc. 2201, p. 10, Doc. 30, p. 11).

[3] The copy of this grievance also contains a final paragraph that was penned after July 20, 2011:

> I sent a copy to the Chief Administrative Officer and got no response in Menard CC.  I was transferred to Pontiac CC and was not allowed to get this grievance out my legal box until 10-3-2011.  I sent a copy to counselor Elits and he lost my grievance and never responded.  *Sent copy to counselor McNabb and never responded*.

(*Id.* at 15, emphasis added).  The final sentence is different from the copies of the grievances outlined in Footnote 1 above.

### CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit.

*Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.  In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies.  *Id.* 544 F.3d at 742.  If a Plaintiff has exhausted his remedies, the case will proceed on the merits.  If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.  *Id.*

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor.  ILL. ADMIN. CODE TIT. 20, § 504.810(a).  If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b).  The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance.  *Id.* §

504.830(d).   The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken.  *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

Defendant argues that there is no record of Plaintiff having submitted a grievance related

to the July 4, 2011 incident while he was at Menard CC.  However, the evidence shows that Plaintiff wrote a grievance on July 18, 2011 and went through the trouble and expense of having the grievance photocopied by the law library at Menard CC.  It seems unreasonable that Plaintiff would go through such effort and then simply fail to submit the grievance.  Plaintiff provides the same credible testimony that a number of inmates provide: that while in segregation, he placed his grievance between the bars and that once it leaves his hands, he has no control over what happens to the grievance.  Plaintiff is not required to do anything more than submit his grievance for consideration in a timely manner.  That the prison either lost the grievance or elected to not consider the grievance renders the grievance procedure unavailable.

Defendant next offers the untenable argument that if Plaintiff did attempt to file a grievance at Menard CC and was thwarted by the Prison's lack of response, then he still should have filed a grievance directly with the ARB while he was at Pontiac CC.  Such an argument would place the burden on Plaintiff to ensure that the grievance process works, a burden which he cannot possibly shoulder.  Plaintiff was only required to submit his grievance in a timely manner to the officials at Menard CC, which he did.  Plaintiff was not required to resubmit his grievance, to the prison officials at Pontiac CC or the ARB, when he received no response from Menard CC.  The fact that Plaintiff went through the effort of documenting who he submitted his grievances to, mailing them to the ARB, and submitting them as soon as he could at Pontiac CC, show that Plaintiff wanted his complaints to be addressed by the Illinois Department of Corrections.

### RECOMMENDATIONS

For the foregoing reasons, this Court **RECOMMENDS** the Motion for Summary Judgment filed by Defendant, Ryan Davis, on October 18, 2013 (Doc. 21) be **DENIED**, that the Court find that Plaintiff exhausted his administrative remedies, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: January 15, 2014**

**DONALD G. WILKERSON**
**United States Magistrate Judge**